UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-23770-CIV- MOORE/SIMONTON
CONSENT CASE

LT's BENJAMIN RECORDS, INC.,
and FRANCISCO SALDANA,

    Plaintiffs,

v.

MACHETE MUSIC,

    Defendant.
    _____/

UMG RECORDINGS, INC.
and MACHETE MUSIC,

    Counterplaintiffs,

v.

LT's BENJAMIN RECORDS, INC.,
and FRANCISCO A. SALDANA
FERNANDEZ, p/k/a "Luny,

    Counterdefendants.
    _____/

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

Presently pending before the Court is Defendant's Motion To Dismiss Under Federal Rule of Civil Procedure 12(b)(6) (DE # 31). The motion is fully briefed (DE # 34, 35). On June 17, 2010, the undersigned heard argument on the motion. For the reasons stated below, the motion to dismiss is denied.

    I. Background

Plaintiffs are proceeding under a four-count Amended Complaint. In Count I, Plaintiff LT's Benjamin Records (hereafter LT), alleges that Defendant Machete Music (hereafter Defendant) has breached the August 13, 2007 contract between LT and

Defendant (hereafter the Agreement).  In Count II, LT requests an accounting of the relationship between LT and Defendant and the payment of monies due to LT.  In Count III, Plaintiffs LT and Francisco Saldana (hereafter Saldana), request declaratory relief that a) Defendant has breached the terms of the Agreement because the terms of the Agreement and the restrictive covenants therein violate Florida statutes, and b) Saldana owes no further personal services to Defendant.  In Count IV, Saldana alleges that Defendant violated Fla. Stat. § 542.22 by attempting to enforce the restrictive covenant contained in the Agreement, and requests triple damages for the alleged restraint of trade (DE # 22).

Specifically, Plaintiffs alleges that Defendant owes them:  $52,000 pursuant to a "controlled producer advance" (DE # 22 at 2, ¶8); yearly overhead expenses in the amount of $225,000 for the years 2007, 2008 and 2009 (DE # 22 at 2-3, ¶9); $300,000 for two artist signing advances at $150,000 each (DE # 22 at 3, ¶10); $40,000 for studio time (DE # 22 at 3, ¶13); a minimum sum of $40,000 for Saldana's services as a producer to produce up to 10 third party recordings, at $4,000 per recording (DE # 22 at 3-4, ¶14); up to $1,500,000 in Defendant's net proceeds for albums recorded with certain artists (DE # 22 at 4, ¶15); $400,000 in advances (DE # 22 at 5, ¶18); and an accounting and a payment of 49% of the profits (DE # 22 at 3, ¶¶11, 12).  Plaintiffs also allege that Defendant would not accept other recordings from Plaintiffs made by "dark skinned Latin artists" (DE # 22 at 4, at ¶16), and that Defendant failed to exercise its reasonable efforts to market, promote and distribute the recordings delivered by Plaintiffs and spend at least $75,000 on each album (DE # 22 at 4, at ¶17).  Finally, Plaintiffs allege that Defendant was required to assign to Plaintiffs ownership interests in certain recordings, but did not do so (DE # 22 at 5, at ¶20).  Plaintiffs submit that they have completed all of their

obligations under the Agreement (DE # 22 at 5, at ¶20).[1]

The instant motion followed.

II. The Positions of the Parties

A. Defendant's Motion

Defendant initially moves to dismiss Counts 3 and 4 of the Complaint, with prejudice, because Plaintiff Saldana cannot state a claim for restraint of trade. Defendant asserts that the Florida antitrust statutes permit reasonable exclusivity clauses; and that the five-year exclusivity period contained in the Agreement is not an illegal restraint of trade and does not violate Fla. Stat. §§ 542.33 and 542.3352 because its restrictions on competition are reasonable in time, area and line of business (DE # 31).

B. Plaintiffs' Response

Plaintiffs respond that since the Agreement purports to restrict Saladna, a music producer and song writer, from performing any services in the music industry, except for Defendant, for a five-year period, but does not require Defendant to release the records made by Saldana or pay any money to Saldana, the Agreement might stop Saldana from making a living in the music business. Plaintiffs also contend that the Agreement is an illegal restraint of trade because it does not meet the requirements of § 542.335 (DE # 34 at 2). Plaintiffs initially assert that, contrary to Defendant's argument, the Agreement does not establish an employer/employee relationship between Saldana and Defendant, and therefore, the motion to dismiss should be denied (DE # 34 at 2). Plaintiffs then assert that the Agreement is unenforceable because there is no mutuality,

---

[1] UMG Recordings, Inc. and Defendant Machete Music have filed an Amended Ccounterclaim against Plaintiffs (DE # 38), which Plaintiffs have answered (DE # 44).

as Defendant has no obligation to accept and release records made by Saldana (DE # 34 at 3).

At the June 17, 2010 hearing, Plaintiffs argued that the motion to dismiss should be denied because Fla. Stat. § 542.335(g)(3) required that a court determining the enforceability of a restrictive covenant shall consider all pertinent legal and equitable defenses, which Plaintiffs contend require the trial court to make findings of fact on the reasonableness of the restrictions.  Plaintiffs also contended that UMG induced Plaintiff to sign the illegal, overly broad Agreement by implying that it would act in good faith toward Saldana, and that UMG breached the Agreement based on animosity toward Saldana.

### C. Defendant's Reply

In reply, Defendant describes the Agreement as requiring Plaintiff Saldana, in exchange for a $600,000 advance payment from Defendant, to render his exclusive services in the music business to the record label formed, pursuant to the Agreement, by Defendant and Plaintiff LT (DE # 35 at 1, 2-4).  Defendant contends that Plaintiffs have provided no factual or legal support for their assertion that the exclusivity provision is not enforceable (DE # 35 at 4).  Defendant reiterates that the Agreement satisfies the requirements of Fla. Stat. § 542.335 because 1) it is reasonable in time, lasting for the five years covered by the Agreement with no post-term restrictions on Plaintiff Saldana's ability to compete; 2) it is reasonable in area, as the music business is worldwide; and 3) it is reasonable in line of business, restricting Plaintiff Saldana from the activities which he is supposed to perform for Defendant (DE # 35 at 5-6),   Defendant then argues that because it has shown that the exclusivity provisions in the Agreement are reasonable, the burden shifts to Plaintiffs to demonstrate that the exclusivity provisions are not

reasonably necessary to protect Defendant's interest.  While Plaintiffs argue that the Agreement prevents Saldana from working in the music business, Defendant responds by citing a portion of the Agreement which contemplates that Saldana will perform services for non-Label profits, subject to Defendant's approval, where those services do not interfere with Saldana's obligations to the Label (DE # 35 at 7).  Defendant also claims that the Agreement states that Defendant will release in the United States each Album recorded and delivered under the Agreement, provided that Plaintiff LT has fulfilled all material obligations under the Agreement (DE # 35 at 7-8).   The Agreement further states that if Defendant does not release a specific album, then, after giving Defendant notice and an opportunity to cure, Plaintiffs would have the right to release that album elsewhere (DE # 35 at 8).

At the hearing, Defendant reiterated the arguments they made in their papers that the Agreement was valid on its face, that the restrictions on Plaintiff Saldana's employment contained in the Agreement were reasonable, and that a finding on the enforceability of the Agreement could be made on a motion to dismiss.  Defendant also stated that the only argument which Plaintiff Saldana was making was that UMG had breached the contract, which was a completely separate argument from whether the restrictions on Plaintiff Saldana's employment contained in the Agreement were reasonable.

### III.  Standard of Review

With respect to a Motion to Dismiss made pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, it is well-settled that in order to state a claim, Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  While a court, at this stage of the litigation, must consider the

allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), *cited in American Dental Association v. Cigna Corp.*, 2010 WL 1930128 at *4 (11th Cir. May 14, 2010). In *Iqbal* and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007), the Supreme Court explained the pleading requirements which must be met in a Complaint if it is to survive a motion to dismiss for failure to state a claim. The Court emphasized that the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949, *cited in American Dental Association v. Cigna Corp.*, 2010 WL 1930128 at *4 (11th Cir. May 14, 2010). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Determining whether a complaint states a plausible claim for relief is a context specific undertaking that requires the court to draw on its judicial experience and common sense. *Iqbal*, 129 S. Ct. at 1949, *cited in American Dental Association v. Cigna Corp.*, 2010 WL 1930128 at *4 (11th Cir. May 14, 2010).

      Further, because the Agreement is both referred to in the Amended Complaint and is central to Plaintiffs' claim, and the contents of the Agreement are not in dispute,

this Court may consider the Agreement as part of the pleadings for purposes of the instant motion, and Defendant's attachment of the Agreement to this motion does not require the motion to be converted into a summary judgment motion. *See SFM Holdings, LTD v. Banc of America Securities, LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005), *citing Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir. 1999).

### IV. Count III

In Count III, Plaintiffs seek declaratory relief, pursuant to Fla. Stat. § 86.10 et seq. and 28 U.S.C. § 2201 (DE # 22 at 7, ¶32). Plaintiffs ask this Court to declare that Defendant breached the express terms of the Profit Sharing Agreement, and also breached the covenants of good faith and fair dealing implied in the Agreement by: a) refusing to distribute any recordings made by Plaintiff, other than the recording made by artists EREXXI and Archangel, especially if the artist was dark skinned, b) refusing to use Plaintiff LT as a producer; and 3) refusing to use reasonable efforts to market, promote and distribute the two albums delivered by Plaintiff to Defendant (DE # 22 at 7, ¶35). Plaintiffs then allege that the terms of the Agreement purport to be a restrictive covenant, ostensibly requiring Plaintiff Saldana to provide his exclusive services in the music business to the label, which appears to be Plaintiff LT and Defendant, but that Defendant alleges that Plaintiff violated the Agreement first, by performing certain services for companies in the music industry other than Defendant (DE # 22 at 7-8, ¶36). Plaintiffs allege that the terms of the Agreement violate Fla. Stat. §§ 542.18 and 542.33(1), and the restrictive covenants do not comply with Fla. Stat. § 542.33(2) or (3), or § 542.335 (DE # 22 at 8, ¶37). Finally, Plaintiff Saldana states that since he is uncertain of his continuing obligations to Defendant, if any, and since Defendant has intimidated third

parties from contracting for Saldana's services in the music industry, Saldana requests a declaration that he owes no further personal services to Defendant under the terms of the Agreement (DE # 22 at 8, ¶38).

V. Count IV

in this Court, Plaintiff Saldana alleges a violation of Fla. Stat. § 542.22, in that Defendant has attempted to enforce the terms of the Agreement as a restraint of trade, in violation of Fla. Stat. § 542.18, damaging Saldana because third party companies, including, but not limited to, Sony Music, Ruff World and the artist known as PeeWee, have refused to enter into contracts for Saldana's service, leaving him unable to earn a living in the music industry (DE # 22 at 8-9, ¶¶41-45). Saldana seeks threefold damages in the amount of $7,200,000 plus attorney's fees (DE # 22 at 9, ¶46).

VI. The Motion Is Denied Because The Issue of Whether The Non-Compete Covenant Contained In the Agreement is Reasonable Is a Question of Fact

A. Florida Law Allows Restrictive Covenants

Florida Statute § 542.335(1) states, in pertinent part, that "the enforcement of contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business, is not prohibited." Further, it appears clear that a restrictive covenant between a manufacturer and an independent distributor can be enforceable. *See Orthopedic Equipment, Co. v Streetman & Assocs., Inc.*, 390 So.2d 134 (Fla. 5th Dist. Ct. App. 1980). In *Streetman*, the plaintiff granted the defendant an exclusive distributorship for its products in Florida and in other areas. In return for this, the defendant agreed, *inter alia*, to exert its best efforts to sell and promote the plaintiff's products, hospital and medical merchandise, and the defendant agreed not to sell any items of hospital and medical

merchandise in the exclusive area, other than that made by plaintiff. 390 So.2d at 135-36. The lower court found this provision constituted an illegal restraint of trade, and modified the restrictions to allow sales in the exclusive area of hospital and medical merchandise not made by the plaintiff. The appellate court reversed, finding that a restrictive covenant which coincides with the term of a contract is valid, because it does not prevent an individual from supporting himself. 390 So.2d at 136.

There is no disagreement that for the in-term restriction here to be found enforceable, Defendant must prove the existence of a legitimate business interest justifying the restrictions, and that Defendant must also prove that the restrictions are reasonable in time, area, and line of business. *See Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1231 (11th Cir. 2009), *citing Envtl. Servs., Inc. v. Carter*, 9 So.2d 1258, 1262 (Fla. Dist. Ct. App. 2009), *interpreting* Fla. Stat. § 542.335(1).

### B.  The Issue of Whether The Non-Compete Covenant Contained In the Agreement is Reasonable Is a Question of Fact Which Cannot Be Determined in a Motion To Dismiss

However, both the Florida courts and the federal courts have found that the issues of whether a business has a legitimate business interest justifying restrictions, and whether the restrictions are reasonable in time, area, and line of business are questions of fact, and not of law. *See Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1237-38 (11th Cir. 2009); *Whitby v. Infinity Radio*, 951 So.2d 890, 897 (Fla. Dist. Ct. App. 2007); *accord American Standard, Inc. v. Humphrey*, 2007 WL 2852362 at *3 (Oct. 2, 2007). Therefore, reviewing the Complaint in the case at bar, the undersigned concludes that the allegations are sufficient to state a claim and that this issue of fact cannot be decided by this Court on a motion to dismiss.

Indeed, all the cases which Defendant relies upon were decided in the context of

a preliminary injunction, *see North Am. Products Corp. v. Moore*, 196 F.Supp.2d 1217 (M.D. Fla. 2002); *Lowry Computer Products, Inc. v. Head*, 984 F.Supp. 1111 (E.D. Mich. 1997); *Sigma Chemical Co. v. Harris*, 586 F.Supp.2d 704 (E.D. Mo. 1980); *Envtl. Servs., Inc. v. Carter*, 9 So.2d 1258 (Fla. Dist. Ct. App. 2009); *Litwinczuk v. Palm Beach Cardiovascular Clinic, L.C.*, 939 So.2d 268 (Fla. Dist. Ct. App. 2006), summary judgment, *Precisionir Inc. v. Clepper*, 2010 WL 779298 (S.D.N.Y. Mar. 1, 2010), or at trial, *see Comprehensive Technologies Int'l, Inc. v. Software Artisans, Inc.*, 3 F.3d 730 (4th Cir. 2002), *vacated pursuant to settlement* (Sep. 30, 1993); *Orthopedic Equipment, Co. v Streetman & Assocs., Inc.*, 390 So.2d 134 (Fla. 5th Dist. Ct. App. 1980).

Therefore, based on a review of the record as a whole, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion To Dismiss Under Federal Rule of Civil Procedure 12(b)(6) (DE # 31), is **DENIED**.  Defendant must file its Answer to the Amended Complaint on or before July 8, 2010.

**DONE AND ORDERED** in chambers in Miami, Florida, on June 24, 2010

_____
**ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE**

**Copies provided via CM/ECF to:**
**All counsel of record**